## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**STEVEN GROSSBERG,**
individually and on behalf of all
others similarly situated,                                        **CLASS ACTION**

      Plaintiff,                                              **JURY TRIAL DEMANDED**

v.

**eLOCAL USA LLC,**

      Defendant.

_____/

## CLASS ACTION COMPLAINT

Plaintiff Steven Grossberg brings this class action against Defendant eLocal USA LLC ("Defendant") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., ("TCPA"), arising from Defendant's knowing and willful violations of the TCPA.

2.      Defendant markets itself as a "fast-growing, 10-year-old performance-based advertising company, whose mission is to connect consumers with local businesses."[1]

3.      Defendant focuses on "businesses within the home services and legal sectors."[2]

4.      Upon information and belief, Defendant acts as a lead generator collecting prospective customer information and then selling that information to its own customers for profit.

---

[1] https://www.elocal.com/information#about
[2] https://www.pehub.com/2017/11/llr-partners-provides-25-mln-to-elocal/#

1

5.      Defendant engages in unsolicited telemarketing to obtain new leads and new customers with no regard for consumers' privacy rights.

6.      Upon information and belief, Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

7.       Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct. Plaintiff also seeks statutory damages on behalf of himself and Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

8.      Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one Class member belonging to a different state than Defendant.  Plaintiff seeks up to $1,500.00 in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").

9.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction.  Further, Defendant's tortious conduct against Plaintiff occurred within this district and, on information and belief, Defendant has sent the same text message complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts have occurred within this district, subjecting Defendant to jurisdiction here.

## PARTIES

10.      Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

11.      Defendant is a Delaware corporation with its principal address at 1100 E. Hector St., Ste. 101, Conshohocken, Pennsylvania 19428.  Defendant directs, markets, and provides business activities throughout the State of Florida.

## THE TCPA

12.      The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

13.      The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14.      The TCPA exists to prevent communications like the ones described within this Complaint.  *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

15.      In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice."  *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

16.      The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA.  According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and

inconvenient.  The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

17.    In 2012, the FCC issued an order further restricting automated telemarketing calls, requiring "prior express <u>written</u> consent" for such calls to wireless numbers.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

18.    To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and [the plaintiff] having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20.    "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21.    "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii) & 47 C.F.R. § 64.1200(f)(12)); *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22.     The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

23.     In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

24.     If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

25.     Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

26.     With respect to standing, as recently held by the United States Court of Appeals for the Ninth Circuit:

> Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any *additional* harm beyond the one Congress has identified."

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)).

27.     Similarly, the United States Court of Appeals for the Second Circuit recently held that the receipt of a telemarketing or unsolicited call "demonstrates more than a bare violation and satisfies the concrete-injury requirement for standing."  *Leyse v. Lifetime Entm't Servs., LLC*, Nos. 16-1133-cv, 16-1425-cv, 2017 U.S. App. LEXIS 2607 (2d Cir. Feb. 15, 2017) (citing *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013) ("The injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice."); *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819-21 (8th Cir. 2015) (holding that receipt of two brief unsolicited robocalls as voicemail messages was sufficient to establish standing under TCPA); *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1252 (11th Cir. 2015) (holding that injury under similar TCPA provision may be shown by one-minute occupation of fax machine)).

## **FACTS**

28.     On or about October 15, 2018, October 16, 2018, October 17, 2018, October 18, 2018, October 29, 2018, October 30, 2018, October 31, 2018 and November 1, 2018, Defendant caused the following automated text messages to be transmitted to Plaintiff's cellular telephone number ending in 1175 ("1175 Number"):

+1 (305) 520-7235 ›

Text Message
Mon, Oct 15, 12:54 PM

This is Pain Away— Hurt in an auto accident? Contact 3055207235 to have your no-cost analysis because can secure money. Text NO to opt out

Tue, Oct 16, 2:58 PM

Hi there Steve, a local attorney in FL wants to discuss your claim. Have a minute for a short call because you can acquire money for your injury?

Tue, Oct 16, 6:37 PM

Are you not wanting advice Steve? You could type "no" but you must call because getting an attorney is simple and can earn you money you deserve.

Wed, Oct 17, 12:24 PM

Steve: don't lose your chance to get a lawyer for your auto accident case. Contact us because you could receive the cash you deserve.

Thu, Oct 18, 3:17 PM

Today's the day Steve-- Call me because you may miss your chance for locating an attorney in FL and securing the money you need!

Maybe: Kelly ›

Text Message
Mon, Oct 29, 10:23 AM

Steve; I am Kelly w/ DōcMSG. You might be entitled to compensation. Free consult with a local INJURY attorney in FL! Respond no to stop.

Mon, Oct 29, 3:45 PM

Suffering a personal injury? Talk with a local INJURY lawyer in FL who can help you; Get the money you deserve, Steve.

Tue, Oct 30, 10:30 AM

Steve-- you can connect with a CAR ACCIDENT LAWYER in FL a Free consultation! Don't miss out on getting compensated-- What time should I call?

7



29.     Defendant's text messages on October 15, 2018, October 16, 2018, October 17, 2018, and October 18, 2018 originated from the 305-520-7235 number.

30.     Defendant's text messages on October 29, 2018, October 30, 2018, October 31, 2018 and November 1, 2018 originated from the 305-745-7336 number.

31.     Defendant's text messages constitute telemarketing/advertising because Defendant obtains prospective customers information from consumers who may need an attorney, and then sells that information to attorneys for profit.

32.     After Defendant sent Plaintiff multiple text messages, in an effort to determine who the entity was contacting him, on November 14, 2018, Plaintiff wrote Defendant back at the 305-745-7336 telephone number as shown below:



33.     Shortly thereafter, Defendant or its agents, called Plaintiff from the telephone number

8

(305)-745-7336 and informed Plaintiff that he was being contacted by or on behalf of Defendant and/or 247 Legal.

34.     Upon information and belief, 247 Legal is a brand and/or website owned and/or operated by or on behalf of Defendant.[3]

35.     Plaintiff received the subject text messages within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

36.     Upon information and belief, Defendant caused similar text messages to be sent to individuals residing within this judicial district.

37.     At no point in time did Plaintiff provide Defendant with his express consent to be contacted by text messages using an ATDS.

38.     Plaintiff is the subscriber and sole user of the 1175 Number.

39.     The numbers used by or on behalf of Defendant (305-520-7735 and 305-745-7336) are known as a "long codes," standard 10-digit codes that enables Defendant to send SMS text messages *en masse*.

40.     The impersonal and generic nature of Defendant's text messages, demonstrate that Defendant utilized an ATDS in transmitting the messages.

41.     To send the text messages, Defendant used a messaging platform (the "Platform") that permitted Defendant to transmit thousands of automated text messages without any human involvement.

42.     The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendant.

43.     The Platform has the capacity to generate sequential numbers, which capacity was in

---

[3] www.Call247legal.com

fact utilized by Defendant.

44.     The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendant.

45.     The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by Defendant.

46.     The Platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by Defendant.

47.     The Platform has the capacity to schedule the time and date for future transmission of text messages, which occurs without any human involvement.

48.     Additionally, the Platform has an auto-reply function that results in the transmission of text messages to individual's cellular telephones automatically from the system, and with no human intervention, in response to a keyword (e.g. "STOP") being sent by a consumer.

49.     To transmit the text messages at issue, Defendant uploaded a list of telephone numbers which are stored indefinitely by the Platform.

50.     Defendant then created the content of the text messages, selected the telephone numbers to transmit the messages to, and selected a date and time for transmission.

51.     In making these selections, Defendant was simply creating a set of instructions that were subsequently executed automatically (i.e. with no human intervention), by the Platform.

52.     The Platform automatically executed Defendant's instructions as follows:

        (1) The Platform retrieved each telephone number from the list of numbers uploaded by Defendant in the sequential order the numbers were listed by Defendant;

(2) The Platform then generated each number in the sequential order listed by Defendant and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content;

(3) Each packet was then transmitted in the sequential order listed by Defendant to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers.

(4) Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendant. Each mobile carrier then sent the message to its customer's mobile telephone.

53.     The above execution of Defendant's instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

54.     Further, the Platform "throttles" the transmission of the text messages depending on feedback it receives from the mobile carrier networks. In other words, the platform controls how quickly messages are transmitted depending on network congestion. The platform performs this throttling function automatically and does not allow a human to control the function.

55.     The following graphic summarizes the above steps and demonstrates that the dialing of the text messages at issue was done by the Platform automatically and without any human intervention:



56.     Defendant's unsolicited text message caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.  Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

## CLASS ALLEGATIONS

### PROPOSED CLASS

57.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

58.     Plaintiff brings this case on behalf of the below defined Class:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message using the same type of equipment used to text message Plaintiff, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number.**

59.     Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

60.     Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all

members is impracticable.

61.     The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### COMMON QUESTIONS OF LAW AND FACT

62.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class.  Among the questions of law and fact common to the Class are:

> (1) Whether Defendant made non-emergency calls to Plaintiff and Class members' cellular telephones using an ATDS;
>
> (2) Whether Defendant can meet their burden of showing that they obtained prior express written consent to make such calls;
>
> (3) Whether Defendant's conduct was knowing and willful;
>
> (4) Whether Defendant is liable for damages, and the amount of such damages; and
>
> (5) Whether Defendant should be enjoined from such conduct in the future.

63.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

64.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

65.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

66.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

67.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

68.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

14

69.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

70.     The TCPA defines an "automatic telephone dialing system" (hereinafter "ATDS") as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." *Id*. at § 227(a)(1).

71.     Defendant – or third parties directed by Defendant – used equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class.

72.     These calls were made without regard to whether Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cell phones of Plaintiff and the other members of the putative Class when its calls were made.

73.     Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express consent.

74.     As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls.

15

**WHEREFORE**, Plaintiff Steven Grossberg, on behalf of himself and the other members of the Class, prays for the following relief:

a.      A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

b.      A declaration that Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, were willful and knowing;

c.      An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express consent of the called party;

d.      An award of actual, statutory damages, and/or trebled statutory damages; and

e.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

 Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendants and the communication or transmittal of the text messages as alleged herein.

Date: January 20, 2019

Respectfully submitted,

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713

**EISENBAND LAW, P.A.**
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Michael Eisenband
Florida Bar No. 94235
Email:
MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

*Counsel for Plaintiff and the Class*